UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNELL JOHNSON,<br><br>      Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No. 1:20-cv-00496-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 19, 22) |

      This matter is before the Court on Plaintiff Lynell Johnson's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her applications for Social Security Disability Insurance and Supplemental Security Income. The parties have consented to entry of final judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 10-11.)

      The matter was taken under submission on the parties' briefs without a hearing. Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows:

////

///

**I.     DISCUSSION**

**A.     The ALJ's Treatment of Medical Opinion Evidence**

Plaintiff first argues that the Administrative Law Judge ("ALJ") erred in addressing the medical opinions of her treating chiropractor, Dr. Robert Froh, and State Agency Physicians S. Amon, M.D. and J. Berry, M.D. (ECF No. 19-1 at 13-15.)

1.     <u>Legal Standards</u>

In this circuit, courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. [1] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

---

[1] The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which revise the rules regarding evaluation of medical opinions and expand the categories of acceptable medical providers. However, these revisions do not apply to Plaintiff's claim, which was filed in 2016.

evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986))

*Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017).

An ALJ must also consider opinions of other medical professionals—such as chiropractors—who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1) (2015); *see also Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (describing circumstances when opinions from "other sources" may be considered acceptable medical opinions). Opinions from "other sources," such as chiropractors, "are not entitled to the same deference" as those of a physician. *Revels v. Berryhill,* 874 F.3d 648, 655 (9th Cir. 2017). Opinions from " 'other sources' . . . may be discounted provided the ALJ provides reasons germane to each source for doing so." *Fields v. Comm'r of Soc. Sec. Admin,* 2019 WL 3003992, at *3 (E.D. Cal. Jul. 10, 2019) (citing *Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017); *see also Molina v. Astrue,* 674 F.3d 1104, 1111(9th Cir. 2012) (holding that opinions from "other sources" may be rejected with germane reasons).

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Coleman v. Saul,* 979 F.3d 751, 755 (9th Cir. 2020) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul,* 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1998 (9th Cir. 2008).

2. <u>Dr. Froh's Opinions</u>

On February 22, 2017, Plaintiff's treating chiropractor, Dr. Froh, opined that Plaintiff could lift and carry 5 pounds and was capable of frequent fingering and occasional handling and

3

reaching with her left hand. (A.R. 436; *see also* ECF No. 19-1 at 13.) On March 13, 2017, Dr. Froh opined that Plaintiff was unable to perform her past work and permanent residual disability was anticipated. (A.R. 432).

The ALJ weighed Dr. Froh's opinions as follows:

> The February 22, 2017 and March 13, 2017 opinions of the claimant's treating chiropractor, R. Froh, D.C., were also considered (3F/6, 10, 17, 21). Dr. Froh determined the claimant was limited to a reduced range of sedentary work where she was restriction [sic] to lifting, pushing, and pulling up to five (5) pounds and only occasional handling and fingering. Dr. Froh also indicated that the claimant was unable to perform her past work and permanent residual disability was anticipated (3F/12). However, this opinion was issued only a few months following the claimant's left wrist release surgery. Further, these opinions are not consistent with the medical evidence of record, which shows that following the surgery, the claimant reported that her condition had improved. Moreover, the claimant's work activity is consistent with medical improvement as she earned $10,135 in 2016 and $10,719 in 2017 from working in a concession center job where she lifted and set up booths and chairs at sports stadiums (not sedentary work). It is also found that the issue of whether a claimant is disabled is reserved for the Commissioner and this opinion was not issued by an acceptable medical source. Therefore, little weight is afforded to these opinions.

(A.R. 20).

Plaintiff argues that the ALJ's findings concerning her employment in 2016 and 2017 are not supported by substantial evidence. Specifically, Plaintiff contends that "there is no information in the record about how much weight Johnson lifted at [her] temporary, part-time job" and this work was not inconsistent with the manipulative limitations Dr. Froh assessed. (ECF No. 19-1 at 16.) Further, there was no indication that the restrictions were intended to be temporary as the ALJ "appeared to assert." (*Id.*) The Commissioner, in turn, argues that there is substantial evidence for the ALJ's findings regarding Plaintiff's work history were consistent with Plaintiff's hearing testimony. (ECF No. 22 at 7-8.)

The Court finds that the ALJ did not err in giving Dr. Froh's opinions little weight. Contrary to Plaintiff's argument, the ALJ did not premise her findings regarding Dr. Froh's opinion on evidence that Plaintiff lifted a specific weight at her job, nor did he find that Dr. Froh intended the restrictions to be temporary. Instead, the ALJ found that Plaintiff's ability to perform work was consistent with medical improvement and inconsistent with the severity of Dr. Froh's opinions. (A.R. 20.) Additionally, Plaintiff testified at the hearing that she worked concession

centers setting up chairs and booths at football fields, arenas, and soccer fields in 2016 and 2017. (A.R. 35.) Plaintiff testified that she would have to lift approximately five chairs as part of her job duties. (A.R. 36.) This activity as described by Plaintiff is inconsistent with the definition of sedentary work.[2] Further, the ALJ gave other germane reasons for discounting Dr. Froh's opinions, including that they were inconsistent with the medical record and that disability determinations are reserved to the Commissioner. *See Bayliss v. Barnhart,* 427 F.3d 1211 (9th Cir. 2005) (reasoning that inconsistency with the medical record is a germane reason); *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner."); *Molina,* 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may be reasonably discerned."). Plaintiff does not challenge either of these reasons for discounting Dr. Froh's opinions or argue that they are not supported by substantial evidence.

Thus, the ALJ gave sufficient germane reasons for giving Dr. Froh's opinions little weight and did not err.

### 3. Drs. Amon and Berry's Opinions

On April 6, 2017, Dr. Amon reviewed the medical evidence of record and determined that Plaintiff was capable of performing less than a full range of medium exertional work with limitations on her ability to lift, push, and pull with her left hand. (A.R. 76-77, 88-90.) On August 8, 2017, Dr. Berry reviewed the medical evidence of record and opined that Plaintiff's limitations were consistent with Dr. Amon's determination. (A.R. 111-12, 127-29.)

In evaluating these opinions, the ALJ stated as follows:

> The April 6, 2017 and August 8, 2017 opinions of state agency medical consultants S. Amon, M.D. (1A; 2A) and J. Berry, M.D. (5A; 6A) were also considered. Dr. Amon and Dr. Berry reviewed the medical evidence of record and

---

[2] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See* 20 C.F.R. §§ 404.1567(a), 416.967

determined that the claimant was capable of performing a less than full range of medium exertional work with a reduced ability to lift, push, and pull with the left upper extremity and postural and manipulative limitations. This opinion is internally inconsistent in that an individual limited in manipulation with the left hand would not be capable of medium exertional work. Further, the undersigned finds that the claimant's left-wrist impairment would cause a more significant limitation in the claimant's exertional ability and additional restrictions. Specifically, following the claimant's surgery, she continued to have intermittent pain and some clinical findings of impairment, such as continued tenderness to palpation and reduced grip strength. Therefore, little weight is afforded to these opinions.

(A.R. 20.)

Plaintiff argues that the ALJ erred by failing to explain why he did not accept the manipulative limitations as assessed by the State Agency Physicians. (ECF No. 19-1 at 14.) The Commissioner argues that the ALJ's opinion stated that these opinions were given little weight because they were internally inconsistent, which was sufficient. (ECF No. 22 at 9.)The Court finds that the ALJ provided an adequate explanation of his findings. It is worth noting that the RFC includes more restrictions than the State Agency Physicians opined. Drs. Amon and Berry both found that Plaintiff was not disabled based on their opined functional limitations. Plaintiff wishes to add the manipulative restrictions in these opinions without accounting for the otherwise less restrictive functional limitations in these opinions.

Additionally, while the ALJ "must do more than offer his conclusions" and "must set forth his own interpretations and explain why they, rather than the doctors' are correct," the ALJ did so in this case. *Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ explained that the State Agency Physicians' opinions were internally inconsistent "in that an individual limited in manipulation with the left hand would not be capable of medium exertional work." (A.R. 20). The ALJ did not ignore these physicians' findings or use boilerplate language without an explanation of the basis for his conclusions. *See Garrison v. Colvin,* 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for this conclusion.").

Additionally, the ALJ limited Plaintiff to frequent reaching and fingering with the left

6

hand, which is consistent with these physicians' opinions that Plaintiff is "limited" in her left hand. Therefore, the ALJ did not err in his evaluation of the State Agency Physicians' opinions.[3]

**A.     The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony**

Plaintiff next argues that the ALJ erred in his evaluation of her subjective symptom testimony. (ECF No. 19-1 at 15-16.)

1.     <u>Legal Standards</u>

As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

---

[3] In her discussion of Drs. Amon and Berry's opinions, Plaintiff also contends that the ALJ did not explain what evidence the RFC allowing for frequent use of the left hand was based. (ECF No. 19-1 at 14.) According to Plaintiff, "[e]very doctor who examined Johnson's left wrist or reviewed the records involving Johnson's left wrist opined that she could not perform handling and fingering activity with her left hand more than occasionally." (ECF No. 19-1 at 14.) However, this is an inaccurate statement of the opinion evidence. In Dr. Froh's February 22, 2017 opinion, next to "Fingering" he checked the box "Frequently" and next to "Handling" he checked the box "Occasionally" with the notation "L.U.E." (A.R. 436.) Likewise, Drs. Amon and Berry noted that Plaintiff is "[l]imited" in both handling and fingering on her left side. (A.R. 89, 127.) Therefore, there were some medical opinions opining that she could perform handling and fingering with her left hand more than occasionally. Notably, while the ALJ gave these opinions little weight, he did not reject them entirely. In light of the record as a whole, the Court finds that the ALJ reasonably translated the medical opinions in the record into the RFC finding that Plaintiff was able to perform frequent handling and fingering with her left hand. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *and for resolving ambiguities.* We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citation omitted).

In weighing a claimant's credibility, an ALJ may consider, among other things, the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *Thomas v. Barnhart,* 279 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court "may not engage in second-guessing." *Id.*

2.  Plaintiff's Activities of Daily Living

Given that there is objective medical evidence of an underlying impairment in this case, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

In his opinion, the ALJ first summarized Plaintiff's hearing testimony and written statements regarding her symptoms. (A.R. 18.) The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ then spent approximately one-and-a-half pages and eight paragraphs summarizing the relevant evidence that contradicted Plaintiff's subjective symptom testimony. (A.R. 18-20.) Specifically, the ALJ described the objective medical evidence in the record, including Plaintiff's improvement following her 2016 surgery on her left wrist and her failure to complete physical therapy. (A.R. 18-19.) The ALJ cited to Plaintiff's work history in 2016 and 2017 where she set up booths and chairs at sports stadiums, as well as her testimony that she left this work due to being uncomfortable in crowds and not due to her left wrist. (A.R. 19.) The ALJ also noted that Plaintiff is not prescribed any pain medication or involved in any ongoing treatment. (*Id.*) As to Plaintiff's activities of daily living, the ALJ stated:

> It is important to note that the claimant reported that she is independent in self-care, albeit with some difficulty using her left hand, and activities of daily living, such as caring for her children, preparing simple meals, occasional yard and housework, driving and shopping (3E; 4F; Hearing Testimony).

(A.R. 19.)

Plaintiff argues that none of the activities the ALJ cited are inconsistent with Dr. Froh's opinions. (ECF No. 19-1 at 16.) However, the ALJ did not reason that these activities were inconsistent with Dr. Froh's opinions or rely on those activities to discount Dr. Froh's opinions. As discussed above, the ALJ provided other germane reasons for discounting Dr. Froh's opinions, namely that that they were inconsistent with the medical evidence of record, inconsistent with Plaintiff's work activities, and contained determinations regarding Plaintiff's permanent disability that are reserved for the Commissioner. (A.R. 20.) Instead, the ALJ relied on Plaintiff's daily activities to discount her subjective symptom testimony. The fact that those activities may not necessarily be inconsistent with Dr. Froh's opinion does not undermine the ALJ's credibility analysis.

Plaintiff points to various other statements in the record that she contends show her activities of daily living were limited. (ECF Nos. 19-1 at 16.) Plaintiff cites to evidence that she had difficulty with personal care, was no longer caring for her child, lost her home and her job due to her wrist issues,[4] can only go shopping once a week, and can no longer lift posts and pans to cook a large meal. (ECF Nos. 19-1 at 16.) The Commissioner asserts that Plaintiff is merely expressing a different interpretation of the record, which is not a basis for overturning the ALJ's analysis, and the ALJ gave other legally sufficient reasons for discounting Plaintiff's subjective symptom testimony. (ECF No. 22 at 13.)

The Court has reviewed the ALJ's reasoning and the underlying citations and finds that the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony are legally sufficient. Even where a claimant's activities of daily living suggest some difficulty functioning, they may be grounds for discrediting a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina,* 674 F.3d at 1112-13; *see, e.g., See, e.g., Marsh v. Colvin*, 792 F.3d 1170, 1174 n.3 (9th Cir. 2015) (affirming ALJ's rejection of the claimant's symptom allegations based on the claimant's ability to care for a child and participate in vocational

---

[4] Notably, while Plaintiff's brief argues that she lost her job doing administrative work at the end of 2014 because of difficulty using her left hand, Plaintiff testified at the hearing that she subsequently worked in 2016 and 2017 but left this job because she did not enjoy doing it and did not like being around crowds and not because of issues with her wrist. (A.R. 34, 36.)

9

rehabilitation); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (affirming the ALJ's finding that a claimant was "quite functional" because she could cook, clean, shop, interact with others, and manage finances). The ALJ's citations to the record support his findings regarding the extend of Plaintiff's activities of daily living. Specifically, Plaintiff testified at the hearing that she shops at Wal-Mart late at night or early in the morning to get food and hygiene supplies and is able to drive. (A.R. 46, 51-53.) Plaintiff also completed a function report in which she stated that she picks her son up from school, cares for her son and daughter, can perform personal care with her right hand, prepares simple meals, sometimes does dishes, sometimes does house and yard work, and shops for her food and hygiene. (A.R. 280-292.) During a March 30, 2017 consultative examination with Keiko Miller, Psy.D., Plaintiff also reported that she can complete activities of daily living timely and appropriately but needs to take breaks. (A.R. 452.) Thus, although Plaintiff cites to evidence showing impairment in her activities, this does not undermine the ALJ's reasoning that her activities of daily living were inconsistent with total impairment.

Additionally, as the Commissioner notes, Plaintiff does not address any of the other reasons that the ALJ cited for discounting Plaintiff's subjective symptom testimony. The ALJ also discounted Plaintiff's testimony due to inconsistency with the objective medical evidence, Plaintiff's improvement following surgery, Plaintiff's conservative treatment, failure to complete a prescribed course of treatment, and inconsistencies in her testimony. These are clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (reasoning that improvement with conservative treatment undermined allegations of disabling symptoms); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (holding that, if a claimant complains of disabling pain but fails to seek or follow prescribed treatment, "an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding that "ordinary techniques of credibility evaluation" may be considered, such as prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than

candid."); *see also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1162–63 (9th Cir.2008) (holding that an ALJ's error concerning two invalid reasons given in support of an adverse credibility finding was harmless when remaining valid reasons sustained the ultimate credibility determination).

In light of the foregoing, and considering the record as a whole, the Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

### B. The ALJ's Treatment of Lay Witness Testimony

Finally, Plaintiff argues that the ALJ erred in giving little weight to the lay witness opinion of Plaintiff's cousin, Sheila Marie Stokes. (ECF No. 19-1 at 16.)

#### 1. Legal Standards

"In determining whether a claimant is disabled, an ALJ must consider lay testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(4). Such testimony is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.* Germane reasons must be sufficiently specific. *Stout*, 454 F.3d at 1054. However,"[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Molina,* 674 F.3d at 1116-17.

#### 2. Ms. Stokes' Opinion

Ms. Stokes completed a Function Report – Adult –Third Party form. (A.R. 266.) Ms. Stokes opined that Plaintiff is limited in lifting, opening jars, social activities, cooking, and cleaning. (A.R. 267.) Plaintiff is unable to use her left hand due to constant pain and cannot work in her profession. (A.R. 267-68.)

The ALJ gave this opinion little weight, reasoning:

> The claimant's cousin, Sheila Maria Stokes, submitted a statement to the state agency wherein she offered descriptions similar to those of the claimant regarding

11

>the nature, severity, and functional impact of her impairments (2E). In light of the evidence as a whole, these statements are given little weight, as the allegations lack material support and there is no indication that Ms. Stokes had any medical background.

(A.R. 21.)

Plaintiff argues that Ms. Stokes provided her opinion in response to the Commissioner's request, and the Commissioner "cannot have it both ways – seek information from family members only to reject their responses by using a generic rote purported rationale." (ECF 19-1 at 17.) Ms. Stokes is not required to have medical expertise to comment on a claimant's limitations, and Ms. Stokes' statements are corroborated by Plaintiff's treating sources. (*Id.*) The Commissioner argues that the ALJ properly rejected Plaintiff's testimony and, as a result, properly rejected the third party's testimony. (ECF No. 22 at 13.)

The Court finds that the ALJ's reasons that Ms. Stokes' opinion lacked "material support" and she did not have a medical background are not legitimate reasons on their own to discount Ms. Stokes' opinion. "[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Contreras v. Saul,* 477 F.Supp.3d 1107, 1129 (S.D. Cal. 2020).

However, as the ALJ noted, Ms. Stokes' descriptions of Plaintiff's limitations were consistent with the Plaintiff's own subjective symptom testimony. *Molina,* 674 F.3d at 1116-17; *Valentine,* 574 F.3d at 694 (finding that, if an ALJ gave germane reasons for rejecting the claimant's similar testimony, those reasons are equally germane to the testimony of the lay witness); *Lewis v. Apfel,* 236 F.3d 503, 512 (reasoning that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"). As discussed above, the ALJ provided legally sufficient reasons for rejecting Plaintiff's similar testimony regarding the nature and extent of her symptoms. Thus, the ALJ provided sufficient germane reasons to give little weight to Ms. Stokes' opinion.

\\\

**II.     CONCLUSION AND ORDER**

In light of the foregoing, the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 18, 2022**                                /s/ Erica P. Grosjean
                                                                        UNITED STATES MAGISTRATE JUDGE